## Smith v. Spring Garden Township

*Thomas H. Lane* and *George M. Elsesser*, for plaintiff.

*Horace Ports* and *John W. Heller, 3rd*, for defendants.

SHADLE, J., March 16, 1964.—Plaintiff, a plumber, filed a complaint in equity seeking to enjoin defendants from enforcing as to him certain plumbing regulations provided for in a contract between defendants relating to disposal of sewage in defendant township. Both defendants filed answers, that of the city containing new matter, to which plaintiff filed a reply. Plaintiff filed requests for findings of fact and conclusions of law, and oral argument was had before the chancellor by counsel for all parties.

In essence, the sole issue is whether defendants may, by a contract under which the city accepts into its sewerage system sewage from the township, require plaintiff to be licensed as a master plumber by the city as a prerequisite to his doing plumbing work in the township.

### Finding of Facts

1. Plaintiff resides in Spring Garden Township, and is engaged in the plumbing business therein.

2. Spring Garden Township is a township of the first class.

3. The City of York is a city of the third class.

4. Defendants have from time to time entered into agreements providing for the conveyance of sewage from certain sewer districts in the township into the sewerage system and disposal plant of the city.

5. As a prerequisite to said agreements, the city has required the following provision to be inserted therein: "No connection shall be made to the sanitary sewage system of the said sewer district, and no plumbing fixtures or appliances shall be installed in any property in the said district connected with said system, without permit first being obtained from the city, and the application therefor and the issuance thereof shall be subject to the same rules and regulations as shall be applicable to connections with the sanitary sewage system of the city and plumbing fixtures or appliance installations therein under any present or future ordinances of the city or Act of Assembly of the Commonwealth."

6. The township has no separate ordinance regulating the examination, licensing and registration of plumbers or the doing of plumbing work in the township.

7. Section 2 of the ordinance of the city adopted January 15, 1915, as amended March 29, 1935, provides that "Permits for plumbing must be taken out by Master Plumbers . . ."

8. The rules and regulations of the city relating to the licensing of plumbers require applicants to have four years' experience as apprentice plumbers, to pass an examination to become journeyman plumbers, to serve for one year as journeyman plumbers, and to pass an examination to become master plumbers.

9. Plaintiff is not licensed as any kind of a plumber by the city.

10. Plaintiff has applied to the city for permits to do plumbing work in the township, which permits have been refused because he is not licensed as a master plumber by the city.

11. By virtue of these facts, plaintiff has been denied the right to do plumbing work in the sewer districts of the township covered by said contracts, and his income has been adversely affected thereby.

## Discussion

Preliminarily, we dispose of an issue raised by the city in its answer and at argument, that plaintiff has an adequate statutory remedy at law by way of mandamus, and that therefore equitable relief is not available to him. Mandamus lies only where a plaintiff seeks to enforce a clear legal right to have an official ministerial duty performed by defendant: Goodman v. Meade, 162 Pa. Superior Ct. 587 (1948). Plaintiff here has no right to obtain a plumbing permit from the city, since he is not licensed by the city as a master plumber, which it requires. He does not in fact seek such relief, but rather a decree establishing that any such licensing and permit may not lawfully be required. Mandamus is not available for this purpose, nor is there any other legal remedy by which plaintiff may avoid the enforcement of these requirements as to him. Accordingly, the equitable remedy of injunction is appropriate, if plaintiff is entitled to it.

Plaintiff asserts that the terms of the contract between defendants are invalid for two reasons: (1) They constitute an attempt by the city to exercise its police power to protect the health and welfare of the citizens of the township, which is beyond its municipal powers; and (2) they constitute an unlawful delegation by the township to the city of the police power of the former to protect its own citizens.

There is no question that the regulation of plumbing and the licensing of plumbers is a valid exercise of the police power of a municipality to protect the health and welfare of its citizens: 9 McQuillin, Municipal Corporations, §26.127 (3rd ed. rev.). The statutory au-

thority of the city to perform such function is found not only in section 2603 of the Third Class City Code of June 23, 1931, P. L. 932, as amended, 53 PS §37603, which is permissive, but also in the Act of June 7, 1901, P. L. 493, as amended, 53 PS §4591, et seq., which is mandatory. Section 1 of the latter statute, 53 PS §4591, provides that ". . . it shall not be lawful for any persons to carry on . . . the business of plumbing . . . in cities of the second, second class A, and third class of this Commonwealth until a certificate or license . . . shall have been granted . . . by . . . such cities . . . nor until they have registered as such . . ." Section 2, 53 PS §4592, requires that ". . . every person . . . with three years or more practical experience . . . shall apply . . . to the . . . board . . . for such certificate or license . . . and if, after proper examination . . . such person . . . shall be found competent, . . . the . . . board . . . shall thereupon issue a certificate or license . . ." The latter part of the same section, 53 PS §4593, authorizes the board of plumbing examiners to "make all reasonable rules, regulations, and examinations . . ." to perform its functions. Presumably, it was pursuant to this authority that the city required by ordinance that plumbing permits be issued only to master plumbers. Presumably also, it was by virtue of rules adopted by the city's board of plumbing examiners that the city requires the experience and examinations referred to in the findings of fact as prerequisites to a master plumber's license.

However, the Act of 1901, supra, by its express terms applies only to second class, second class A and third class cities, and so much of it as at one time was applicable to first class townships was expressly repealed by the Act of May 17, 1939, P. L. 151, sec. 1. Consequently, plaintiff argues that this statute and the ordinances and regulations thereunder cannot be applied in the township because of their own limitations.

He further argues that these measures, designed to protect the health and welfare of residents of the city, cannot be applied by the city to protect the health and welfare of residents of the township.

It does not follow that plaintiff is entitled to relief on these grounds. It is not the city which is attempting to exercise legislative control in the township. Indeed, it could not do so, not only by virtue of the limitations of the Act of 1901, supra, but because it is fundamental that its own municipal legislation is limited to its corporate boundaries, and cannot be exercised outside thereof. See 2 McQuillin, Municipal Corporations, p. 590; 5 McQuillin, Municipal Corporations, p. 126. Neither could it evade these territorial limitations by a contract intended to protect its sewer mains and disposal plant from harmful substances entering from the township. Such an interest might be served by permitting the city to inspect and approve plumbing and sewer installations in the township, but it clearly would not require the city to license the plumbers working in the township. Control of the manner and source of entry of sewage would accomplish this purpose, whether plumbers were licensed or not.

In this case it was the township, presumably acting in behalf of the welfare and health of its own citizens, which attempted by contract to "borrow" the legislative controls of the city. This brings us to the second question, of whether this may lawfully be done.

The township, in the exercise of its police power, clearly has the right to regulate and control plumbing and plumbers. That this was contemplated by the legislature is obvious from the reference in section 1502 of the First Class Township Code of June 24, 1931, P. L. 1206, as amended, 53 PS §56502, to the manner in which ordinances establishing a plumbing code may be enacted. But the township here made no attempt to establish such regulations by an ordinance enacted in

the manner and after the notice prescribed by the code. Instead, by the mere execution of a contract, the township delegated to the city the right to control plumbing and plumbers in the township to whatever extent and in whatever manner the city saw fit to prescribe. The law is clear that this may not be done.

". . . the principle is fundamental and of universal application that public powers conferred upon a municipal corporation and its officers and agents cannot be delegated to others. . . .": 2 McQuillin, Municipal Corporations §10.39. "The state cannot bargain away its right to exercise at all times its police power, nor can a municipality, to which is delegated the right to exercise the state's police power . . . enter into any contract by which the free exercise of the power granted can be abridged, limited or destroyed": McKeesport City v. The McKeesport & Reynoldton Passenger Railway Co., 2 Pa. Superior Ct. 242, 247 (1896) ; Kittanning Electric Light, Heat & Power Co. v. Kittanning Borough, 11 Pa. Superior Ct. 31, 34 (1899) ; Coatesville Borough v. Coatesville Electric Light, Heat & Power Co., 32 Pa. Superior Ct. 513, 516 (1907).

It is stated in 6 McQuillin, Municipal Corporations §24.41, that ". . . when authority to exercise the police power within a defined sphere is delegated by the State to a municipal or other public corporation, the authority is inalienable in the corporation, and it cannot in any manner be contracted away or otherwise granted, delegated, diminished, divided or limited by the corporation. . . .

"It follows that contracts and ordinances relating to any municipal function which embarrass in any degree the municipal power of regulation of public affairs are ultra vires. . . . The welfare of the people is the supreme law, and the welfare of the people of a municipality is to be attained through measures adopted by their governmental representatives, exercising their

own judgment and discretion, and not by others. . . . it cannot abandon its duty to exercise the police power for the purposes thereof even if it wills so to do."

In summary, we draw the distinction between the right of the two municipalities to contract as to the terms upon which one will accept and dispose of sewage from the other, which terms are designated to protect the sewage system and plant of the receiver, on the one hand, and the right of the beneficiary municipality to delegate to the other the exercise within the borders of the former the police power to license, regulate and control plumbers and the plumbing business, on the other hand. The city and the township could and did agree on such a joint sewerage operation. The contract could properly give to the city the right to inspect and approve sewer connections and the installation of plumbing fixtures and appliances in the township. To enforce such right, the agreement could require the issuance of a city permit for such connections and installations. In granting or withholding approval of connections and installations it was proper to require compliance with city rules, regulations and ordinances reasonably designed to protect, and having the effect of protecting, the city collection system and disposal plant from harmful substances and the effect thereof. However, the township may not delegate to the city the police power of the former to license, regulate and control plumbers and plumbing within the township boundaries; neither may the city exercise such control by requiring as a prerequisite to township plumbing work that the applicant be a master plumber meeting the criteria for licensing for plumbing work to be done within the city. The former controls concern themselves with the joint performance of the municipal function of sewage collection and disposal, as to which each municipality has a legitimate concern. The latter controls affect only the health and welfare of the citi-

zens of the township, as to which only the township officials may legislate and act.

### Conclusion of Law

1. Equity has jurisdiction to afford plaintiff the relief sought.

2. Defendants may enforce as to plaintiff so much of their contract as gives the city the right to inspect and approve sewer connections and the installation of plumbing fixtures and appliances in the township, the right to require the issuance of a city permit for such connections and installations, and the right to require compliance with city rules, regulations and ordinances reasonably protecting the city collection system and disposal plant from harmful substances.

3. Defendants may not enforce as to plaintiff any requirement for the issuance to him of a permit for work to be done in the township that he be licensed as a master plumber by the city.

4. Defendants should be enjoined from enforcing as to plaintiff said contract except as herein limited.

5. Defendants should pay the costs of these proceedings.

### Decree Nisi

And now, to wit, March 16, 1964, at 10:00 A. M., it is ordered, adjudged and decreed that defendants herein be, and they are hereby enjoined from enforcing as to the plaintiff herein so much of their contracts as may require plaintiff to be licensed as a master plumber by the defendant city as a prerequisite to obtaining from the defendant city a permit to do plumbing work in the defendant township. It is further ordered that defendants pay the costs of these proceedings.

The prothonotary shall give prompt notice to the parties of the entry of this decree nisi, and in the absence of exceptions filed thereto, the same shall be entered by the prothonotary, upon præcipe, as a final decree.